IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07CV184-1-MU
3:98CR299–MU

| | |
|---|---|
| THEODORE HOWZE, Jr., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** is before this Court upon Respondent's Motion for Summary Judgment (Doc. No. 5), filed August 22, 2007; and Petitioner's Motion for Court to Take Judicial Notice of Supreme Court Authority[1] (Doc. No. 14), filed July 22, 2009.

## PROCEDURAL HISTORY

On November 2, 1998, Petitioner was named in one count of a Bill of Indictment charging him with knowingly, willfully, and unlawfully possessing with intent to distribute a quantity of cocaine and cocaine base and aiding and abetting others in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On January 8, 1999, the Government filed an Information pursuant to 21 U.S.C. § 851 listing five prior felony drug convictions of the Petitioner. On February 2, 1999, the parties filed a plea agreement with this Court. On February 25, 1999, Petitioner entered a guilty plea at his Rule 11 hearing. On April 1, 2003, after granting a Motion for

---

[1] The Court automatically considers relevant Supreme Court authority before issuing a decision. As such, a motion for the Court to take such action is unnecessary and the motion is denied.

Downward Departure,[2] this Court sentenced Petitioner to two hundred and forty months imprisonment with three years of supervised release. Petitioner did not directly appeal his sentence or conviction.

On April 5, 2004, Petitioner filed a Motion to Vacate, Set Aside, or Correct Sentence. (3:04cv155-1-MU). In his Motion to Vacate, Petitioner alleged, among other things, that his counsel failed to file a direct appeal even though Petitioner specifically requested that he do so. On December 20, 2004, in accordance with this Court's practice in such cases, this Court granted Petitioner's Peak[3] claim and dismissed the remaining claims without prejudice. (3:04cv155: Doc. No. 7.)

On January 10, 2005, Petitioner directly appealed his criminal sentence and conviction. Petitioner's appellate counsel filed an Ander's[4] brief. Petitioner filed a supplemental brief asserting: various ineffective assistance of counsel claims; district court error for finding him to be a career offender; a sentencing start date error; and a Booker[5] error. On May 31, 2006, the United States Court of Appeals for the Fourth Circuit affirmed Petitioner's sentence and conviction. United States v. Howze, No. 05-4163 (4th Cir. May 5, 2006).

---

[2] Petitioner complains that the Government should have moved for a downward departure under both § 5K1 and 18 U.S.C. § 3553. He asserts that the Government breached the plea agreement when it failed to move pursuant to both sections. First, as is clearly set forth in the plea agreement, the Government was under no obligation to move pursuant to any particular section. Moreover, it is clear from the record that both sections were invoked to permit a downward departure to below the statutory minimum.

[3] United States v. Peak, 992 F.2d 39 (4th Cir. 1993).

[4] Anders v. California, 386 U.S. 738 (1967).

[5] United States v. Booker, 543 U.S. 220 (2005).

On May 1, 2007, Petitioner filed the instant Motion to Vacate, Set Aside, or Correct Sentence. In his present motion Petitioner asserts that: 1) the Government breached the plea agreement; 2) he received ineffective assistance of counsel; and 3) he was erroneously determined to be a career offender.

## ANALYSIS

### A. BREACH OF PLEA AGREEMENT

Petitioner alleges that the Government breached its plea agreement with him. More specifically, Petitioner asserts that the Government, in exchange for Petitioner entering a guilty plea and assisting the Government, promised him that he would receive a downward departure in his sentencing to 240 months for his assistance with the Rhyne case. (Doc. No. 1 at 8.) Petitioner contends that the Government also promised him that any sentence for the violation of the terms of supervised release would run concurrent with any sentence imposed on the possession with intent to distribute cocaine charge. (Id.) That is, the Government would request that Petitioner's sentence in his federal criminal case would commence the same day as the sentence for his supervised release revocation. Petitioner also alleges that it was agreed that he would receive full credit on his federal sentence for the time spent in county jail awaiting the outcome of the Rhynes case.[6] (Id.) Finally, Petitioner alleges that the government promised to request a three-level reduction for acceptance of responsibility and to move pursuant to § 5K1.1 and § 3553 for a four-level reduction in his offense level for substantial assistance beyond the

---

[6] Petitioner entered his plea agreement with the Government on February 1, 1999, and his plea hearing was held February 25, 1999. A Petition and Order for Warrant issued and was executed on March 24, 1999. On or about July 27, 1999, Petitioner was sentenced to 57 months imprisonment for violating the terms of his supervised release.

Rhynes case.[7] (Id. at 8-9.)

The record does not support Petitioner's claim. None of the terms Petitioner now asserts were part of the plea agreement are contained in the written plea agreement which specifically sets forth that:

> There are no agreements, representations, or understandings between the parties in this case, other than those that are explicitly set forth in this Plea Agreement and none will be entered into unless executed in writing and signed by all the parties.

(Plea Agr. ¶ 21.)

In addition, at his plea hearing[8] Petitioner specifically affirmed that he understood that "if the sentence [was] more severe than [he] expected or the Court [did] not accept the government's sentencing recommendation, [he would] still be bound by [his] plea and have no right to withdraw it." (Plea Hearing Tr. 10.) Significantly, Petitioner also swore under oath that other than the terms of his plea agreement no one had made him any promises of leniency or a light

---

[7] Petitioner's plea agreement specifically addresses the parties agreement with regard to substantial assistance and does not in any way delineate between substantial assistance for the Rhyne case and for other cases.

[8] In reaching a decision on this case the Court, in accordance with the law, has placed great weight on the Petitioner's representations at his Rule 11 Hearing. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)(representations made by a defendant at a plea hearing, as well as any findings made by the judge, constitute a formidable barrier in any subsequent collateral proceeding). Petitioner tries to avoid this result by citing to the case of United States v. White, 366 F.3d 291 (4th Cir. 2004). This Court does not find "extraordinary circumstances" comparable to those set forth in the White case present in the instant case. For example, unlike in White, in the instant case direct evidence exists in contravention of Petitioner's present assertions. In addition, specific terms of the plea agreement and specific statements at his plea hearing contradict Petitioner's present assertions. Moreover, there is no concession by the Government that counsel was ineffective. This Court finds Petitioner's present assertions "palpably incredible and patently frivolous or false." This Court finds the Fourth Circuit's holding in United States v. Lemaster, 403 F.3d 216 (4th Cir. 2005) to be more instructive.

4

sentence to induce him to plead guilty. (Plea Hearing Tr. 15-16.) At the conclusion of the plea hearing Petitioner swore that had heard and understood all parts of the plea hearing proceeding and declined the open opportunity to make a question or statement at that time. (Plea Hearing Tr. 16-17.)

Contemporaneous prosecution documents and contemporaneous prosecution statements as officers of the Court further undermine Petitioner's present self-serving assertions. The prosecution documents – a January 7, 1999, letter from the prosecution to defense counsel and a July 22, 2002, prosecution note to file – clearly set forth that the Government did not, under any circumstances, contemplate Petitioner receiving a sentence below 240 months. (Gov't Mot. Summ. J., Exs. 4, 8.) Furthermore, in accordance with this position, at both the plea hearing and the sentencing hearing, the prosecution emphasized for the record that the agreement was that, even with a downward departure motion for cooperation, Petitioner would receive a sentence of no less than 240 months. (Plea Hearing Tr. 14; Sent. Hearing Tr. 4.) Indeed, at the plea hearing the prosecutor stressed:

> There's also a very detailed section on providing assistance to the government. And I wanted to underscore one section in that language . . . . And the provision I want to highlight, this is a request of Mr. Higdon whose case this is, is paragraph 19B, third paragraph within B, which is all on page 8 of the Plea Agreement, reads as follows: Should the Government in its sole discretion determine that the defendant has rendered substantial assistance, and should the government determine that a downward departure motion is appropriate, the parties agree to jointly recommend to the Court a sentence of no less than 240 months.

(Plea Hearing Tr. 14.)

At Petitioner's sentencing hearing the Government again reiterated in open court that the plea agreement expressly provides that the parties agreed to recommend that if the Government

5

made a downward departure motion Petitioner should receive a 240 month sentence. (Sent. Hearing Tr. 4.) Immediately following the Government's highlighting of this term, the Court asked Petitioner if he had anything he would like to say. (Sent. Hearing Tr. 4.) Petitioner took the opportunity to speak but did not make any reference to any oral agreements. (Sent. Hearing Tr. 4-5.)

In contrast, Petitioner provides no evidence to support his claim beyond his bald assertions that these numerous terms were part of his plea agreement. Based upon the above, this Court concludes that the Government did not breach the terms of the plea agreement it had entered with Petitioner and this claim is dismissed.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's contentions that he received ineffective assistance of counsel are governed by the holding in Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290.

Moreover, a petitioner who alleges ineffective assistance of counsel following the entry

6

of a guilty plea has an even higher burden to meet. Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). When a petitioner challenges a conviction entered after a guilty plea, in order to establish the requisite prejudice, such a petitioner must show that "there is a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. ), cert. denied, 488 U.S. 843 (1988). Claims of ineffective assistance of counsel at sentencing after a guilty plea, however, require a petitioner to establish that a reasonable probability exists that absent the alleged error, the results of the proceeding would have been different. United States v. Mayfield, 320 Fed. App'x 190, 191 (4th Cir. 2009).

**1. Involuntary Guilty Plea**

Petitioner alleges that his counsel was ineffective for failing to argue for the enforcement of the terms he claims were part of the plea agreement but were not contained in the written plea agreement. That is Petitioner asserts that his counsel was ineffective for failing to seek to "have jail time credit awarded, a § 5K2.12 downward departure based for Defendant acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b) and for substantial assistance pursuant to section of the United States Guidelines and Title 18, § 3553(e), United States Code . . . ." (Mot. to Vac. 13.) Petitioner asserts that had he known prior to, during, or immediately after the plea that all the assurances made by his attorney to get him to plead guilty were false, he never would have pled guilty[9] and would not have stood silent at sentencing. As such, Petitioner contends that his

---

[9] While Petitioner asserts he would not have pled guilty, a review of the record reveals that the facts support a conclusion that a reasonable defendant would have pled guilty rather than insisting on going to trial. See Slavek v. Hinkel, 359 F. Supp. 2d 473, 494 (E.D. Va. 2005)(asking whether a "reasonable defendant, properly counseled, would not have pled guilty, and would have insisted on going to trial"). Petitioner was arrested with 20 pieces of cocaine

7

guilty plea was unknowing and involuntary.

At a minimum, Petitioner cannot satisfy the prejudice prong of his claim. As demonstrated below, even if his counsel erroneously informed Petitioner as to the sentence he would receive or specifics regarding guideline provisions, Petitioner cannot, in light of the terms of his plea agreement and his answers under oath at his plea and sentencing hearings, establish that he was prejudiced.

Petitioner's argument that he was misled into pleading guilty is belied by the record in this case. At his plea hearing[10] Petitioner swore under oath that he wanted to plead guilty. (Plea Hearing Tr. 2.) He further swore that he understood that he was entering a guilty plea that could not later be withdrawn. (Plea Hearing Tr. 3.) Petitioner also swore that he understood that he was pleading guilty to [conspiracy][11] to possess with intent to distribute crack cocaine and that as

---

base in his possession. (PSR ¶ 6.) In addition, a search of an apartment connected with Petitioner which revealed a shoe box that contained 331 grams of cocaine base and over thirteen thousand dollars. (PSR ¶ 7.) Given the overwhelming evidence against Petitioner coupled with the mandatory life sentence he faced without a motion from the Government, this Court concludes that a reasonable defendant would not have proceeded to trial even if he had known that the alleged promised terms were not part of the plea agreement.

[10] In reaching a decision on this case the Court, in accordance with the law, has placed great weight on the Petitioner's representations at his Rule 11 Hearing. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)(representations made by a defendant at a plea hearing, as well as any findings made by the judge, constitute a formidable barrier in any subsequent collateral proceeding). Again, Petitioner tries to avoid this result by citing to the case of United States v. White, 366 F.3d 291 (4th Cir. 2004). Again, this Court does not find "extraordinary circumstances" comparable to those set forth in the White case present in the instant case.

[11] The Court notes that at his plea hearing Petitioner was informed and affirmed that he was pleading guilty to possession with intent to distribute cocaine and cocaine base. (Pl. Hearing Tr. 7.) Petitioner was then mistakenly informed of the elements for conspiracy to possess with intent to distribute. (Pl. Hearing Tr. 7-8.) Petitioner argues that this misstatement underscores the involuntary and unknowing nature of his guilty plea. This Court disagrees. In addition to affirming at his plea hearing that he was charged with possession with intent to distribute,

a result of his plea he faced a mandatory term of life imprisonment. (Plea Hearing Tr. 7-8.) Petitioner also swore under oath that his counsel had explained how the United States Sentencing Guidelines might apply to his case and that he understood that the Court would not be able to determine his sentencing range until after his pre-sentence report was written. (Plea Hearing Tr. 9.) Petitioner swore that he understood that if the sentence he received was harsher than he expected, he would still be bound by his plea agreement. (Plea Hearing Tr. 10.) Petitioner swore that he was in fact guilty of the charge to which he pled guilty. (Plea Hearing Tr. 11.) Petitioner swore that no one had threatened, intimidated, or forced him into entering his plea agreement or his guilty plea. (Plea Hearing Tr. 15.) Significantly, Petitioner also swore that no one had made him any promises of leniency or a light sentence outside of the terms set forth in his plea agreement. (Plea Hearing Tr. 15-16.) The magistrate judge then asked Petitioner if he had heard and understood all of the plea hearing proceedings and whether he still wished to plead guilty. Petitioner responded in the affirmative. (Plea Hearing Tr. 16-17 ). At the conclusion of the plea hearing, the magistrate judge asked Petitioner whether he had any questions or statements that he would like to make – Petitioner responded "no." (Plea Hearing Tr. 17.)

Further buttressing the conclusion that Petitioner knowingly entered his plea are the explicit written terms of Petitioner's plea agreement. Petitioner's plea agreement sets forth that

---

Petitioner also admitted that he had reviewed the Indictment which correctly set forth the crime to which he was pleading guilty. (Pl. Hearing Tr. 3.) In addition, Petitioner stated under oath that his counsel had thoroughly reviewed with him the charge against him. (Pl. Hearing Tr. 8-9.) Moreover, Petitioner was informed of the correct penalty associated with the crime for which he was indicted. (Pl. Hearing Tr. 8.) In addition, at his sentencing hearing Petitioner stated under oath that he had received and reviewed his presentence report which correctly set forth the crime to which he was pleading guilty. (Sent. Hearing Tr. 3.) Indeed, Petitioner does not presently assert that he did not know at his plea hearing that he was pleading guilty to possession with intent to distribute..

9

the statutory sentence for the crime to which he was pleading guilty was mandatory life imprisonment. (Plea Agr. ¶ 2.) The plea agreement specifically set forth that Petitioner's precise sentence had not yet been calculated and that "any estimate from any source, including defense counsel, of a likely sentence is a prediction rather than a promise, . . ." (Plea Agr. ¶ 2.) Of particular importance to the instant claim, the plea agreement contained a substantial assistance section which specifically stipulated that "[w]hen and if the defendant assists the government as described above . . . [t]he United States in its sole discretion, will determine whether said assistance has been substantial." (Plea Agr. ¶ 19a.) In addition, the plea agreement set forth that if the government determined that Petitioner had rendered substantial assistance, the government might make a § 5K1.1 downward departure motion and might also, in its sole discretion, make a motion pursuant to § 3553. (Plea Agr.¶ 19b.) Most significantly, Petitioner's plea agreement contained the following sentence "[s]hould the government, in its sole discretion, determine that the defendant has rendered substantial assistance and should the Government determine that a downward departure motion is appropriate, the parties agree to jointly recommend to the Court a sentence of no less than 240 months." (Plea Agr. ¶ 19b.) Finally, the plea agreement set forth in bold on the signature page that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those that are explicitly set forth in this Plea Agreement and none will be entered into unless executed in writing and signed by all the parties." (Plea Agr. ¶ 21.)

Based upon Petitioner's representations at his Rule 11 Hearing and his Sentencing Hearing, and the record in this case, the Court concludes that, regardless of what his counsel may

have told him[12] about what kind of sentence he would receive, Petitioner understood the terms of his plea such that his plea was entered knowingly and voluntarily. Consequently, Petitioner cannot establish the requisite prejudice and his ineffective assistance of counsel claim, based upon an alleged involuntary guilty plea is denied.

## 2. Career Offender

Petitioner also alleges that his counsel was ineffective because he failed to challenge the state court convictions used to classify him as a career offender which Petitioner contends were not proper predicate convictions. More specifically, Petitioner alleges that his state convictions did not qualify as controlled substance offenses under § 4B1.1.

Again, Petitioner's claim fails because he cannot establish that he was prejudiced. Regardless of whether or not Petitioner was properly classified as a career offender, he was still subject to a mandatory sentence of life imprisonment pursuant to 21 U.S.C. § 841(b). Pursuant to § 841(b) a defendant who is guilty of violating 21 U.S.C. § 841(b)(1)(A) after two or more prior convictions for a felony drug offense have become final shall be sentenced to a mandatory term of life imprisonment. The term "felony drug offense" is defined in 21 U.S.C. § 802(44). That section sets forth that a "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marijuana, anabolic steroids,

---

[12] Petitioner's trial counsel signed an affidavit in 2004 setting forth that Petitioner was well aware that the plea agreement provided for a minimum sentence of 240 months even with substantial assistance. (Parks Aff. ¶¶ 12, 13.) Petitioner's trial counsel also stated that he and co-counsel "did extensive research regarding the Plea Agreement and whether there was anything that could be done which would allow [Petitioner] to be sentenced to less than 240 months" but concluded that no provision in the guidelines would allow Petitioner to receive a sentence of less than 240 months. (Parks Aff. ¶¶ 14-15.).

depressant or stimulant substances." 21 U.S.C. § 802(44). There is no question Petitioner's had at least two prior felony drug offenses as defined by § 802(44). As such, even if he were improperly classified as a career offender and his counsel's performance were deficient for not objecting to that erroneous classification, Petitioner was not prejudiced because he was subject to a statutory mandatory term of life imprisonment under § 841(b).

### 3. Failure to Object to Failure to Award Credit for Presentence Jail Time

Petitioner also alleges that his counsel was ineffective for failing to object when this Court did not award him credit for the almost four years that he spent in jail awaiting sentencing.[13] Petitioner asserts that his counsel had promised him that his sentences would be concurrent and that he would receive jail credit for the time he had spent in jail. Petitioner argues that the instant federal conviction should have been ordered to be retroactively concurrent with the 57 month federal sentence he was then serving for his supervised release revocation and that his counsel was ineffective for not challenging this Court's order.

At Petitioner's sentencing hearing his counsel requested that the Court run the instant sentence concurrently with his supervised release conviction. (Sent. Hearing Tr. 8.) The Court granted Petitioner's counsel's request.

Counsel did not request that the Court award Petitioner jail credit for the time he had

---

[13] On appeal, Petitioner argued that this Court intended his 240 month sentence to retroactively commence on the same date he had begun serving a sentence imposed earlier upon revocation of his supervised release. The Fourth Circuit denied Petitioner's claim and further stated that "any challenge to the Bureau of Prison's implementation of the sentence may be raised in a 28 U.S.C. § 2241 (2000) petition after exhaustion of administrative remedies." United States v. Howze, No. 05-4163 (4th Cir. May 5, 2006). Petitioner filed a motion in his criminal case raising the same argument and was reminded that the Fourth Circuit had already informed him that this issue had to raised in a § 2241 motion.

spent incarcerated while providing substantial assistance. Petitioner's counsel, however, was not ineffective for failing to make such a request because, at a minimum, Petitioner suffered no prejudice. That is, it was not within the Court's authority to grant such a request. See United States v. Wilson, 503 U.S. 329, 333 (1992)(a district court is not authorized to determine credit for time spent in custody when sentencing a defendant).

Petitioner also asserts that his receipt of jail credit was agreed to by the prosecutor and his counsel. Petitioner argues that his counsel was ineffective for failing to insure that Petitioner received the promised jail credit. Again, as stated previously, the record does not support Petitioner's claim. Petitioner swore that no one had threatened, intimidated, or forced him into entering his plea agreement or his guilty plea. (Plea Hearing Tr. 15.) Significantly, Petitioner also swore that no one had made him any promises of leniency or a light sentence outside of the terms set forth in his plea agreement. (Plea Hearing Tr. 15-16.) Moreover, Petitioner's plea agreement sets forth that the statutory sentence for the crime to which he was pleading guilty was mandatory life imprisonment, (Plea Agr. ¶ 2), and that Petitioner's precise sentence had not yet been calculated and that "any estimate from any source, including defense counsel, of a likely sentence is a prediction rather than a promise, . . ." (Plea Agr. ¶ 2.) Most significantly, Petitioner's plea agreement contained the following sentence "[s]hould the government, in its sole discretion, determine that the defendant has rendered substantial assistance and should the Government determine that a downward departure motion is appropriate, the parties agree to jointly recommend to the Court a sentence of no less than 240 months."[14] (Plea Agr. ¶ 19b.)

---

[14] Petitioner asserts that he has been forced to serve 284 months imprisonment rather than the agreed upon 240 months. First, 240 months was the minimum sentence the Government insisted upon, not the maximum. Second, Petitioner seems to forget that the approximately 48

13

Finally, the plea agreement set forth in bold on the signature page that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those that are explicitly set forth in this Plea Agreement and none will be entered into unless executed in writing and signed by all the parties." (Plea Agr. ¶ 21.) Even if Petitioner's counsel had informed Petitioner that he would receive jail credit, the record establishes that Petitioner understood that his sentence had not yet been determined and that estimates from counsel were merely predictions. Consequently, Petitioner cannot establish that he was prejudiced and his claim is dismissed.

## C. CAREER OFFENDER STATUS

Petitioner also asserts an independent claim that his state court convictions were erroneously used to classify him as a career offender because they were not proper predicate convictions. Petitioner claim fails because he waived his right to raise this claim.

Petitioner's Plea Agreement specifically sets forth that Petitioner waived his right to challenge his sentence or conviction in post-conviction motions except for claims of ineffective assistance of counsel, prosecutorial misconduct, a challenge to a sentence in contravention of an explicit stipulation contained in the plea agreement or a claim based upon an unexpected sentencing issue that has been certified for appeal by the sentencing judge. (Plea Agr. ¶ 15). At

---

months he served in jail prior to his sentencing for the instant offense was being credited to a sentence for a previous crime. He had no right for his sentences in such circumstances to run retroactively concurrently. Indeed, the Guidelines recommend that such sentences be run consecutively. See U.S.S.G. § 5G1.3 app. n.3(C)(recommending sentence for instant offense should run consecutively to revocation sentence); § 7B1.3 app. n. 4 ("it is the Commission's recommendation that any sentence of imprisonment for a criminal offense that is imposed after revocation of probation or supervised release be run consecutively to any term of imprisonment imposed upon revocation.")

his Rule 11 hearing, Petitioner swore under oath[15] that, among other things, he understood that he was waiving his right to challenge his sentence or conviction in a post-conviction proceeding. (Plea Hearing Tr. 15-16.)

The United States Court of Appeals for the Fourth Circuit has upheld knowing and voluntary waivers to contest convictions or sentences in § 2255 motions. See United States v. Lemaster, 403 F.3d 216, 220-21 (4th Cir. 2005); accord United States v. Johnson, 410 F.3d 137, 151-53 (4th Cir.), cert. denied, 126 S. Ct. 461 (2005)(upholding defendant's knowing and voluntary waiver of appellate rights). This Court has found Petitioner's plea to be knowing and voluntary. Petitioner's career offender claim does not fall within the scope of the exceptions to the post-conviction waiver provision. Consequently, inasmuch as Petitioner has not established that his Plea Agreement is somehow invalid, see supra, this Court concludes that the plea agreement's waiver provision is valid and fully enforceable, and that it stands as an absolute bar to Petitioner's attempts to challenge his conviction and sentence based upon an alleged improper career offender determination.

Finally, even if Petitioner had not waived his rights to raise this claim in a § 2255 proceeding, he has procedurally defaulted this claim. Claims that could have been raised on appeal, but were not,[16] are procedurally defaulted. See Bousley v. United States, 523 U.S. 614, 621-22 (1998)(habeas review is an extraordinary remedy and will not be allowed to do service

---

[15] In accordance with the law, this Court has placed great weight on the Petitioner's representations at his Rule 11 hearing. See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977)(representations made by a defendant at a plea hearing, as well as any findings made by the judge, constitute a formidable barrier in any subsequent collateral proceeding).

[16] The Court notes that Petitioner raised a career offender claim on appeal but that such claim was not the same as the one he raised in his Motion to Vacate.

for an appeal). Notwithstanding Petitioner's assertions to the contrary, this claim could have been raised on direct appeal.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Petitioner's Motion for Court to Take Judicial Notice of Supreme Court Authority (Doc. No. 14) is **DENIED**;

2. Respondent's Motion for Summary Judgment (Doc. No. 5) is **GRANTED**;

3. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence (Doc. No. 1) is **DISMISSED**; and

4. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong)(citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Signed: December 21, 2009

Graham C. Mullen
United States District Judge